# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE LEE BELL,<br><br>        Petitioner,<br><br>v.<br><br>DANIEL PARAMO, Warden, et al.,<br><br>        Respondents. | Case No.: 16cv0727-BAS (PCL)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Eddie Lee Bell (hereinafter "Petitioner"), is a state prisoner proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner is serving a sentence of 29 years-to-life imposed as a result of a 1997 conviction for making a terrorist threat, enhanced under California's Three Strikes law by three prior felony convictions. (Pet. at 1-2.) He challenges here the denial of his Proposition 36 petition to recall his sentence.[1] (Id. at 6-23.) His commitment offense

---

[1] Proposition 36 "diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony . . . [and] created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety." People v. Yearwood, 213 Cal.App.4th 161, 167-68, 151 Cal.Rptr.3d 901, 904 (2013).

was not a serious felony for purposes of the Three Strikes law when he was convicted, but had become one by the time Proposition 36 was enacted. He claims that the finding by the state court that he is ineligible for relief because his offense is now a serious felony is based on an erroneous statutory interpretation of Proposition 36 (claim one), and violates state and federal ex post facto principles (claim two). (Id.)

Respondent has filed an Answer with an attached Memorandum of Points and Authorities in Support. (ECF No. 13.) Respondent argues that federal habeas relief is not available as to claim one because it presents only an issue of state law. (Memorandum of Points and Authorities in Support of Answer ["Ans. Mem."] at 12-13.) Habeas relief is not available as to claim two, Respondent contends, because the denial by the state court, on the basis that ex post facto principles are not implicated here, is neither contrary to, nor involves an unreasonable application of, clearly established federal law. (Id. at 13-15.)

For the following reasons, the Court finds that federal habeas relief is unavailable as to Petitioner's claims because the state court adjudication of them is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. The Court also finds that even if Petitioner could satisfy those standards, habeas relief is not available because he has not shown that he is in custody in violation of the federal Constitution, or the laws or treaties of the United States, as a result of the denial of his petition to recall his sentence. The Court therefore recommends the Petition be denied.

I.  **PROCEDURAL BACKGROUND**

On July 31, 1997, a San Diego County Superior Court jury found Petitioner guilty of the felony of making a terrorist threat in violation of California Penal Code § 422, along with misdemeanor violations of false imprisonment in violation of Penal Code § 236, and battery in violation of Penal Code § 242. (Lodgment No. 1, People v. Bell, No. D029617, slip op. at 5-6 (Cal.Ct.App. Apr. 15, 1999); Lodgment No. 3, Clerk's Tr. ["CT"] at 8.) In a bifurcated proceeding, the trial court found Petitioner had suffered three prior strike convictions within the meaning of Penal Code §§ 667(b)-(i) and 1170.12, and had served

four prior prison terms within the meaning of Penal Code § 667.5(b).  (Id.)  Petitioner was sentenced to a mandatory term of 25 years-to-life under California's Three Strikes law, along with four consecutive one-year terms, one for each of the prior prison terms.  (Id.)  Petitioner's offense is summarized as follows:

> Bell met Rory Hawk toward the end of 1996.  The two lived together in various Chula Vista motels for a period of approximately two months.  They had an agreement whereby Bell sold cocaine and Hawk worked as a prostitute, giving him the money she earned.  On at least three occasions, Hawk left Bell for periods of several days but always returned.  During these times Hawk would go on drug binges, using crack cocaine and prostituting herself to pay for it.
>
> On March 20, 1997, Hawk again left Bell and started a drug binge.  She left because she was jealous of Bell's relationships with two other women including Martin, Bell's codefendant in the trial court.  Hawk went on a drug and prostitution binge for three days, during which she did not see Bell.  She did not immediately return to Bell because he did not approve of her drug use.
>
> On March 23, 1997, at approximately 8 p.m., Bell arrived in a van on Market Street, where Hawk was getting into a customer's car.  Bell pulled Hawk away from the car and forced her into the van against her objections.  Inside the van were Alvin Roberts, sitting in the front passenger seat, and Alex Garcia, asleep in the back.
>
> Bell drove the van to the Vagabond Inn in Chula Vista, where upon arrival he asked Hawk why she had left.  Using profanity, Bell told Hawk she had made a mistake by leaving.  At Bell's instruction, Roberts went inside the motel room and told Martin, who was in the room, to go out to the van.  Martin entered the back of the van and began to hit Hawk, while asking Hawk why she had left.  Bell pulled Martin away from Hawk and the three went into the motel room.
>
> Once inside the room Bell told Hawk to "break" herself, which meant to "give him (all) the money (she had)," and Hawk put the little money she had in her possession on the counter.  Bell then ordered Hawk to remove all of her clothes in front of himself, Martin, and Roberts, which she did.  Bell asked Hawk why she had left and told her he "thought (they) were supposed to be a family."  Hawk assured Bell that she would stay with him.  At that point, Hawk thought she did want to stay with him "in a way" because she felt that he was the only person who cared about her.

Bell removed the belt from his pants and tossed it to Martin, who swung the belt at Hawk. Bell then took the belt and swung it at Hawk, striking her on the thigh with the metal buckle. Hawk believed this was punishment for her leaving and that she had let Bell down because she had not been honest with him.

After being struck with the belt, Hawk began screaming. Bell and Martin told Hawk to be quiet and Bell put a sock in Hawk's mouth. While the sock was in Hawk's mouth Bell told her that she was going to choke on her own vomit and die. Bell also told her that there would be no proof because there was be no marks and that he would put her dead body under the bed. Martin said they should put Hawk in a dumpster or feed her to dogs.

When Hawk began to choke, Bell removed the sock from her mouth and Hawk, still naked, lay down on the bed. Using shoestrings, Bell tied Hawk's hands behind her back and moved her to the floor. Hawk remained naked on the floor, with her hands tied, for over a half hour. During this time, Bell told Hawk that she had let him down. Wearing cowboy boots, Bell stood on Hawk's back while speaking with Martin. Bell asked Martin to bring him a meat cleaver with which he attempted, unsuccessfully, to cut Hawk's hair.

Bell untied the shoelaces binding Hawk's wrists. Bell instructed Roberts to stay awake and make sure Hawk did not leave during the night. Hawk heard this and felt she could not freely leave the motel room. Hawk fell asleep on the floor by the bed.

The next morning Bell asked Hawk if she had "learned (her) lesson about being honest" and if she was going to stay or go. Hawk told him that she would stay and agreed to work as a prostitute that morning. Hawk asked Bell to drive her to a friend's house to pick up her clothes, which he did, instructing her not to pull anything funny. Once at her friend's house, Hawk called the police while Bell remained parked outside. When the police arrived, Bell left, but he was arrested later that day.

A joint jury trial against Bell and Martin began on July 21, 1997. At trial Hawk testified that she called the police on March 24, 1997, because she was concerned for her safety. She testified that although Bell had hit her in the past, nothing like the incidents on the night of March 23, 1997, had occurred previously.

Hawk gave conflicting testimony regarding whether she believed Bell and Martin would follow through on their threats to her. On direct

4

      examination, Hawk testified she thought she was going to die.  On cross-examination, Hawk testified she believed Bell always wanted the best for her and that he had protected her.  She testified that she had not taken Bell's and Martin's threats seriously and that she viewed the incident on March 23, 1997, as a "lesson" and, "(t)o a certain extent," a game.

(Lodgment No. 1, People v. Bell, No. D029617, slip op. at 2-5 (footnotes omitted).

      On January 10, 2013, Petitioner filed a petition to recall his sentence pursuant to Proposition 36, pointing out that his 1997 offense was not a serious or violent offense for the purposes of California's Three Strikes law at the time it was committed. (CT 1-8.) He argued, as he does here, that the verb tense in the statutory language of Proposition 36 provided that relief is available if his commitment offense was considered serious or violent at the time it was committed, and, alternately, that the failure to provide relief would violate ex post facto principles. (Id.)

      The People conceded that Petitioner's commitment offense, a violation of California Penal Code § 422, was not a serious felony within the meaning of the Three Strikes law at the time it was committed, but pointed out that it had become a serious felony when that law was amended in 2000, and was therefore a serious felony for the purposes of that law by the time Proposition 36 was passed in 2012. (CT 9-13.) The People contended that ex post facto principles were not implicated because Proposition 36 did not increase any sentences, but decreased many, and argued that Petitioner was disqualified for relief due to the verb tense in the statutory language of Proposition 36 which states: "an inmate is eligible for resentencing if . . . the inmate is serving an indeterminate term of life imprisonment . . . for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by [California Penal Code § 1197.7(c)]." (Id., quoting Cal. Penal Code § 1170.126(e)(1), and citing Cal. Penal Code § 1192.7(c)(38) (listing as a serious felony "criminal threats, in violation of [Penal Code] Section 422.")

      The petition to recall the sentence was denied at a hearing in the superior court on October 28, 2013, where the judge stated: "Based upon my review of the applicable statutes for the purposes of Penal Code Section 1170.126, the conviction under Penal Code Section

422 is a serious felony as defined by law and renders Mr. Bell ineligible." (Lodgment No. 4 at 4-5.) Petitioner appealed on November 13, 2013, arguing, as he does here, that the trial court's decision was based on an erroneous statutory construction and violated ex post facto principles. (CT 15-16; Lodgment Nos. 5-10.) The appellate court stayed the appeal pending the California Supreme Court decision in <u>People v. Johnson</u>, 61 Cal.4th 674 (Cal. 2015) (recognizing an ambiguity in the verb tense used in Proposition 36's statutory language, but holding that resentencing is not authorized where the commitment offense "is now considered serious or violent.") (Lodgment No. 8.) The appellate court denied relief on December 9, 2015, in a written opinion which, as set forth below, relies primarily on <u>Johnson</u>. (Lodgment No. 11.) Petitioner then sought relief in the state supreme court, which summarily denied relief on February 24, 2016. (Lodgment Nos. 12-13.)

## II.   DISCUSSION

Because Petitioner's claims were adjudicated on the merits in state court, federal habeas relief is only available if he shows that the state court adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d) (West 2006). Even if the petitioner can satisfy § 2254(d), or show that it does not apply, he still must show a federal constitutional violation occurred. <u>Fry v. Pliler</u>, 551 U.S. 112, 119-22 (2007); <u>Frantz v. Hazey</u>, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc). Petitioner must also demonstrate that any constitutional error is not harmless, unless it is of the type included on the Supreme Court's "short, purposely limited roster of structural errors." <u>Gautt v. Lewis</u>, 489 F.3d 993, 1015 (9th Cir. 2007), citing <u>Arizona v. Fulminante</u>, 499 U.S. 279, 306 (1991) (recognizing that "most constitutional errors can be harmless.")

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 134 S.Ct. 1697, 1706-07 (2014), quoting Harrington v. Richter, 562 U.S. 86, 103 (2011). The Supreme Court has stated that "[i]f this standard is difficult to meet, that is because it was meant to be . . . [as it] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court decision conflicts with this Court's precedents." Id. at 102-03 ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.") (internal quotation marks omitted).

In order to satisfy the unreasonable determination of the facts prong of § 2254(d)(2), Petitioner must show that the factual findings upon which the state court's adjudication of his claim rests are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### A. Claim One

Petitioner contends in claim one that the denial of the petition to recall his sentence relies on an erroneous statutory interpretation of Proposition 36, and under a proper reading of the statute relief is available when a commitment offense was not a serious or violent offense at the time it was committed, rather than at the time Proposition 36 was enacted. (Pet. 6-17.) Respondent answers that this claim is not cognizable on federal habeas because it presents an issue of state law only. (Ans. Mem. at 12-13.) Respondent acknowledges that a cognizable federal habeas claim can arise from a state sentencing error which "was so arbitrary and capricious as to constitute an independent due process violation," but argues that the denial of the petition to recall the sentence is not arbitrary. (Id. at 13-15.)

"Before we can apply [28 U.S.C. § 2254(d)'s] standards, we must identify the state court decision that is appropriate for our review. When more than one state court has

adjudicated a claim, we analyze the last reasoned decision." Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991).

Petitioner presented his claims in a petition for review filed in the California Supreme Court, which was summarily denied. (Lodgment Nos. 12-13.) He had previously presented the claims to the state appellate court. (Lodgment Nos. 6-10.) The appellate denied claim one, stating:

> "The Act [Proposition 36] amended the Three Strikes law with respect to defendants whose current conviction is for a felony that is neither serious nor violent. In that circumstance, unless an exception applies, the defendant is to receive a second-strike sentence of twice the term otherwise provided for the current felony, pursuant to the provisions that apply when a defendant has one prior conviction for a serious or violent felony." (*Johnson, supra*, 61 Cal.4th at pp. 681-682.) In addition, "the Act provides a procedure by which some prisoners already serving third-strike sentences may seek resentencing in accordance with the new sentencing rules. (Citation.) 'An inmate is eligible for resentencing if . . . (¶) . . . (t)he inmate is serving an indeterminate term of life imprisonment imposed pursuant to (the Three Strikes law) for a conviction of a felony or felonies that are not defined as serious and/or violent . . . .'" (*Id.* at p. 682.)
>
> Based on "the present verb tense in describing the character of the current offense, the parallel structure of the sentencing and resentencing provisions, and the ballot arguments in support of Proposition 36" our high court concluded that "the classification of an offense as serious or violent for purposes of resentencing is based on the law as of November 7, 2012, the effective date of Proposition 36." (*Johnson, supra,* 61 Cal.4th at p. 683.)
>
> Here, Bell's offense of making a criminal threat was not a serious felony at the time Bell committed his offense, but was added to the list of serious felonies by Proposition 21, effective March 8, 2000. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 577; § 1192.7, subd. (c)(38).) Because making a criminal threat was classified as a serious felony on the Act's effective date, Bell was ineligible for recall of his sentence under section 1170.126, and the trial court did not err in denying his petition.

(Lodgment No. 11, People v. Bell, No. D064935, slip op. at 3-4)

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Habeas relief is not available for an alleged error in the interpretation or application of state law. Id. at 67-68. However, with respect to alleged state sentencing errors, "the question to be decided by a federal court on petition for habeas corpus is . . . whether [the error] is so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." Richmond v. Lewis, 506 U.S. 40, 50 (1992) (internal citation and quote marks omitted); see also United States v. Tucker, 404 U.S. 443, 448 (1972) (finding a due process violation where federal sentence was enhanced by the use of unconstitutionally obtained prior convictions).

As set forth above, claim one was denied by the state appellate court on the basis that the California Supreme Court has decided "that 'the classification of an offense as serious or violent for purposes of resentencing is based on the law as of November 7, 2012, the effective date of Proposition 36.'" (Lodgment No. 11, People v. Bell, No. D064935, slip op. at 3, quoting Johnson, 61 Cal.4th at 683.) In fact, the appellate court stayed Petitioner's appeal until Johnson was decided. (Lodgment No. 8.) The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam). This Court must defer to the state court's construction unless it is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).

Petitioner has failed to show that it was in any way arbitrary for the state court to conclude that a serious felony for purposes of Proposition 36 includes crimes which were listed as serious felonies when it was passed in 2012, even though they were not serious felonies when they were committed. Petitioner does not dispute that California's Three Strikes law was amended in 2000 to include his commitment offense as a serious felony, so there is no factual dispute with respect to this claim. Petitioner has not shown any

arbitrariness in the state appellate court rejection of his statutory construction argument regarding the verb tense of the provision providing whether a crime is a serious felony when it was committed or when Proposition 36 was passed. Rather, the record shows the opposite, that the rejection of his claim was based on a considered, well-reasoned opinion from the California Supreme Court. See e.g. Black's Law Dictionary, at p. 119 (10th ed. 2014) (defining arbitrary in part as "founded on prejudice or preference rather than on reason or fact.")

Petitioner's failure to identify any arbitrariness in the statutory interpretation by the state court, and his failure to show that the state supreme court's Johnson opinion is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation," precludes a finding that the state court adjudication of the claim is either contrary to, or involved an unreasonable application of, clearly established federal law. Oxborrow, 877 F.2d at 1399; White, 134 S.Ct. at 1706-07; Richter, 562 U.S. at 103; Bradshaw, 546 U.S. at 76; Richmond, 506 U.S. at 50; Tucker, 404 U.S. at 448. Neither has Petitioner demonstrated that the state court adjudication rests on an objectively unreasonable finding of fact. Miller-El, 537 U.S. at 340. Moreover, even assuming Petitioner could satisfy the provisions of 28 U.S.C. § 2254(d) or show they do not apply, he must still establish that a federal constitutional violation occurred in order to obtain habeas relief. Fry, 551 U.S. at 119-22. As set forth above, Petitioner has not shown that the denial of his petition to recall his sentence was in any way arbitrary or capricious. Thus, he has failed to show that a federal due process violation occurred. Richmond, 506 U.S. at 50; Tucker, 404 U.S. at 447.

The Court finds that federal habeas relief is unavailable as to claim one because the state court adjudication of the claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The Court also finds that even assuming Petitioner could satisfy those provisions, habeas relief is precluded because he has failed to show that his federal due process rights were

violated by the state court statutory interpretation of Proposition 36. See 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.")

### B. Claim Two

Petitioner contends in claim two that state and federal ex post facto principles were violated by the denial of his petition to recall his sentence. (Pet. at 18-23.) He argues that the state appellate court's determination that ex post facto principles are not implicated because the change in law did not increase his sentence, but in fact decreased the sentence of many offenders, is too narrow an interpretation of the state and federal ex post facto clauses. (Id.)

Respondent answers that the appellate court correctly found that Proposition 36 does not provide relief to persons, like Petitioner, who were convicted of criminal offenses which were considered serious felonies at the time of its adoption. (Ans. Mem. at 13-15.) Respondent argues that no ex post facto concerns arise from that finding because Petitioner was neither punished, nor had his punishment increased, for his prior offense due to his ineligibility for relief under Proposition 36. (Id.)

The state appellate court denied claim two, stating:

> "(T)he ban on ex post facto legislation is narrow in scope. Recently, the United States Supreme Court restructured its understanding of the ex post facto clause by rejecting certain expansive formulations that had developed over the years, and by returning the clause to its original meaning at the time the Constitution was framed. (Citations.) (¶) As a result, the ex post facto clause prohibits only those laws which 'retroactively alter the definition of crimes or *increase the punishment for criminal acts*.' (Citations.) The basic purpose of the clause is to ensure fair warning of the consequences of violating penal statutes, and to reduce the potential for vindictive legislation. (Citation.) The federal and state ex post facto clauses are interpreted identically. (Citation.)" (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1170.)

///

> Here, at the time the Act [Proposition 36] became effective, Bell had already been sentenced for his crime. The Act did not increase that punishment or make it greater than when it was committed. "A finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leave him or her subject to the sentence originally imposed." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1040.) Moreover, the Act provides for a *decreased* punishment for certain eligible defendants. Thus, the trial court's denial of Bell's petition to recall his sentence does not raise ex post facto concerns.

(Lodgment No. 11, People v. Bell, No. D064935, slip op. at 4-5)

The United States and California Constitutions proscribe ex post facto laws, and both protect against the adoption of statutes that inflict greater punishment than the law in effect at the time the defendant committed the criminal act. Collins v. Youngblood, 497 U.S. 37, 42-43 (1990); People v. Grant, 20 Cal.4th 150, 158 (1999). The California courts "interpret the federal and state ex post facto clauses identically," both of which provide in relevant part that "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." People v. Helms, 15 Cal.4th 608, 614 (1997) ("United States Supreme Court precedent not only is binding with respect to the federal clause, but is persuasive with respect to the clause in the California Constitution.")

As the state appellate court observed, the United States Supreme Court has held that the ex post facto clause protects from retroactively altering the definition of criminal offenses or increasing punishment for crimes after they have been committed. Collins, 497 U.S. at 43. Petitioner has not shown that his sentence has been increased, merely that it has not been decreased. Neither can he establish that the definition of his crime has been retroactively changed. It is true that its status as a serious felony for the purposes of California's Three Strikes law has changed since he committed his offense. However, that does not amount to an alteration of the definition of his offense. See id. at 52 ("The Texas statute allowing reformation of improper verdicts does not punish as a crime an act previously committed, which was innocent when done, nor make more burdensome the punishment for a crime, after its commission, nor deprive one charged with crime of any

defense available according to law at the time when the act was committed. Its application to respondent therefore is not prohibited by the *Ex Post Facto Clause* of Art. 1, § 10.") Thus, Petitioner has not demonstrated that the state court adjudication of this claim is contrary to clearly established federal law. See Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir. 2010) ("[W]hen a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case.")

Petitioner has failed to show that the state court determination that ex post facto principles are not implicated here "is so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Thus, he has failed to demonstrate that the denial of claim two involved an unreasonable application of clearly established federal law. Id.; Williams, 529 U.S. at 407; Richmond, 506 U.S. at 50. Neither has he demonstrated that the state court adjudication rests on an objectively unreasonable finding of fact. Miller-El, 537 U.S. at 340.

The Court finds that federal habeas relief is unavailable as to claim two because the state court adjudication is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The Court also finds that even assuming Petitioner could satisfy those provisions, habeas relief is precluded because he has failed to show that his federal due process rights were violated by the denial of his petition to recall his sentence. See 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.")

///
///
///


## IV. CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order approving and adopting this Report and Recommendation, and directing that Judgment be entered **DENYING** the Petition with prejudice.

**IT IS ORDERED** that no later than **February 10, 2017**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 24, 2017.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: January 13, 2017

Hon. Peter C. Lewis
United States Magistrate Judge